UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

KATHLEEN PALMER,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,
_____/

Case No. 1:16-cv-660

HON. JANET T. NEFF

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of the Social Security Administration (Commissioner). Plaintiff seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

## STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the

facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was thirty-four years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.193, 287, 301.) She obtained a GED, and has attended some college classes. (PageID.226.) Plaintiff's past relevant work consists of work as a cashier / checker. (PageID.254.) Plaintiff applied for benefits on June 10, 2013, alleging disability beginning August 14, 2009, due to bipolar disorder, asthma, degenerative disc disease, back problems, hypertension, diabetes, and migraines. (PageID.287, 301, 391–403.) Plaintiff's applications were denied on

October 2, 2013, after which time Plaintiff requested a hearing before an ALJ. (PageID.324–331, 334–335.) In a pre-hearing brief, Plaintiff amended her onset date to May 1, 2011. (PageID.519.) On December 23, 2014, Plaintiff appeared with her counsel before ALJ Kenneth E. Ball for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (PageID.218–257.) In a written decision dated February 18, 2015, the ALJ determined that Plaintiff was not disabled. (PageID.193–217.) On May 10, 2016, the Appeals Council declined to review the ALJ's decision, making the ALJ's decision the Commissioner's final decision in the matter. (PageID.28–34.) This action followed.

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 494.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a

---

[1] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 415.920(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. §§ 404.1520(f), 416.920(f)).

3

nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Ball determined that Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her amended alleged disability onset date. (PageID.198.) At step two, the ALJ determined Plaintiff had the severe impairments of: (1) obesity; (2) degenerative disc disease; (3) asthma; (4) migraines; (5) bipolar disorder; and (6) anxiety. (PageID.298.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.200–202.) At the fourth step, the ALJ determined Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) and SSR 83-10, specifically as follows: lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for six hours out of an eight-hour workday with regular breaks with the requirement to change to a sitting position every thirty minutes, sit for six hours out of an eight-hour workday with regular breaks with the requirement to change to a standing position every thirty minutes; push and/or pull within the weight limited indicated for lifting and/or carrying; occasional climbing of ramps and/or stairs, balancing, and stooping; no climbing of ladders, ropes, and/or scaffolds, kneeling, crouching, and crawling; no concentrated exposure to flowers, perfume, or freshly mown grass due to allergies; no concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants; understand, remember, and

> carry out only simple instructions to perform tasks that are simple
> and routine and require only simple work-related decisions; and no
> other exertional or nonexertional limitations.

(PageID.202.) Continuing with the fourth step, the ALJ found that Plaintiff was unable to perform her past relevant work. (PageID.210.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform other work as a machine tender (7,800 regional and 101,000 national jobs), assembler (14,000 regional and 250,000 national jobs), and line attendant (4,800 regional and 125,000 national jobs). (PageID.254–256.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.212.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from May 1, 2011, the amended alleged disability onset date, through February 18, 2015, the date of decision. (PageID.212.)

## DISCUSSION

### 1. The ALJ's Decision is Not Internally Inconsistent.

Plaintiff claims the ALJ's decision is internally inconsistent because the ALJ failed to account for the moderate difficulties in concentration, persistence or pace he found at step three when developing the RFC and hypothetical to the vocational expert.

Plaintiff's reliance on the ALJ's Paragraph B finding is misplaced. The ALJ made this finding at step three of the sequential evaluation when he considered whether Plaintiff met the requirements of various listed mental impairments (12.04 and 12.06). (PageID.200.) This finding

was not the RFC finding made at step four of the evaluation. *See Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (RFC is determined at step four of the sequential evaluation); 20 CFR Pt. 404, Subpt. P, App. 1, 12.00.A. ("RFC is a multidimensional description of the work-related abilities you retain in spite of your medical impairments. An assessment of your RFC complements the functional evaluation necessary for paragraphs B and C of the listings by requiring consideration of an expanded list of work-related capacities that may be affected by mental disorders when your impairment(s) is severe but neither meets nor is equivalent in severity to a listed mental disorder"). As the court explained in *Pinkard v. Comm'r of Soc. Sec.*, No. 1:13–cv–1339, 2014 WL 3389206 (N.D. Ohio July 9, 2014).

> Next, Plaintiff argues that the ALJ erred in concluding that Plaintiff had moderate difficulties in concentration, persistence, and pace, while failing to include an appropriate limitation for these difficulties in the RFC findings . . . Plaintiff refers to the ALJ's paragraph B findings in his evaluation of Plaintiff's depression under 12.04 of the listing of impairments [ ]. 20 C.F.R. pt. 404, subpt. P, app. 1 Sections 12.04, 12.05, 12.06. However, the ALJ does not have to include paragraph B finding[s] in his RFC finding. Paragraph B findings under the listings are findings at step three of the sequential evaluation process, and are not RFC findings pertaining to steps four and five of the sequential evaluation process. 20 C.F.R. pt. 404, subpt. P, app. 1, Section 12.00. Hence, the ALJ was correct in finding that Plaintiff had moderate limitations in evaluating her mental impairment under the listings at step three of the sequential evaluation process, and in not including a "moderate limitation in concentration, persistence, and pace" in his residual functional capacity finding at steps four and five.

*Pinkard*, 2014 WL 3389206 at, *10. Indeed, it is well established that the Paragraph B criteria used in determining whether a claimant meets or equals a listed impairment "are not an RFC assessment." *See* SSR 96–8p, 1996 WL 374184, at *4 (SSA July 2, 1996). RFC is a more detailed assessment made by "itemizing various functions contained in the broad categories found in paragraphs B and

6

C of the adult mental disorder listings in 12.00 or the Listing of Impairments." *Id.* at *4; *see Smith v. Colvin*, No. 3–13–cv–570, 2014 WL 2159122, at *4 (W.D. N.C. May 23, 2014); *Bordeaux v. Comm'r of Soc. Sec.*, No. 3:12–cv–1213, 2013 WL 4773577, at *12–13 (D. Or. Sept. 4, 2013); *Collier v. Comm'r of Soc. Sec.*, No. 1:11–cv–1144, 2013 WL 4539631, at *5–6 (W.D. Mich. Aug. 27, 2013); *Reynolds v. Comm'r of Soc. Sec.*, No. 10–110, 2011 WL 3897793, at *3 (E.D. Mich. Aug.19, 2011).

Plaintiff claims that the above authorities are no longer valid in light of the Sixth Circuit case *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515 (6th Cir. 2014). In that case, the Sixth Circuit found that it was "not clear" whether the ALJ had incorporated the moderate limitations that were earlier found into the hypothetical and RFC determination. That lack of clarity, combined with the court's earlier determination that the ALJ had failed to properly consider three medical opinions, led the court to conclude that the RFC and hypothetical question were not supported by substantial evidence. *Id.* at 533–34. There is no lack of clarity here. To the contrary, the ALJ expressly noted that:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of that sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p.) Therefore, the following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

(PageID.201–202.) The ALJ's explanation is entirely consistent with the authority referenced above and leaves no confusion or inconsistency between his step three analysis and the hypothetical and

7

RFC.  In sum, the ALJ's findings at earlier steps in the sequential analysis do not undermine his later findings that Plaintiff retained the RFC that included the ability to understand, remember, and carry out only simple instructions, to perform tasks that are simple and routine, and those that require only simple work-related decisions.  This claim of error is accordingly rejected.

> 2. **The ALJ's Discussion of Dr. Michael Septer's Opinion Satisfies the Treating Physician Rule.**

On December 17, 2014, Dr. Michael Septer, Plaintiff's treating physician, completed a two page physical and mental RFC questionnaire.  (PageID.1015–1016.)  The questionnaire was in the form of a worksheet in which the doctor's sole obligation was to check a box, fill in a blank, or respond to a short answer question.  Dr. Septer wrote that he had been seeing Plaintiff once or twice a month since 2005.  He attached a list of Plaintiff's diagnoses, which included chronic pain, bipolar disorder, degeneration of a lumbar disc, muscle spasms, obesity, diabetes, COPD, edema, hypertension, MRSA infection, high cholesterol, gout, neuropathy, and migraines.  (PageID.1018.) Plaintiff's symptoms included chronic pain, psychiatric illness, and severe depression.  Dr. Septer further stated Plaintiff was chronically unstable and not responsive to therapy.  (PageID.1015.) Plaintiff's pain was constant and intractable.  (PageID.1015.)  When asked for clinical findings and objective signs, Dr. Septer listed Plaintiff's joint swelling and abnormal x-rays.

Dr. Septer also noted that Plaintiff had depression, somatoform disorder, anxiety, personality disorder, and bipolar disorder.  Dr. Septer found that these impairments imposed certain symptoms, and checked boxes for thirty-one of thirty-three possible answers, indicating that it was his opinion that Plaintiff suffered from, among other things, poor memory, perceptual disturbances, obsession and compulsions, suicidal ideation, and an inability for selfcare activities.  (PageID.1015.) Furthermore, regarding her ability to make occupational adjustments, Dr. Septer found that Plaintiff

had marked limitations in thirteen specific areas. Turning to Plaintiff's physical capabilities, Dr. Septer stated that Plaintiff could only occasionally lift and carry five pound weights and rarely lift ten pound weights. She could not lift or carry heavier weights. In an eight-hour workday, Plaintiff could stand or walk for less than two hours and sit for about two hours. (PageiD.1016.) She could never stoop, crouch, and climb ladders or stairs. (PageID.1016.) Plaintiff also had significant limitations with reaching, handling, and fingering. Ultimately, were she to work, Dr. Septer expected Plaintiff would be absent more than four days per month. (PageID.1017.)

After summarizing Dr. Septer's opinion, the ALJ gave it "little weight," noting that:

> [T]he significant limitations he proposed are without substantial support from the medical evidence and are inconsistent with other substantial evidence of record, including the claimant's history of improvement with consistent treatment. I note that Dr. Septer also made check marks indicating the presence of all but two of the listed signs and symptoms on the first page of the questionnaire. Several of these signs and symptoms are utterly without any support and have never been alleged by the claimant (e.g., delusions or hallucinations; perceptual disturbances; and obsessions or compulsions). Notably, one of two signs and symptoms that were left unchecked was "substance dependence", and there is evidence of that, including in a note by Dr. Septer about four months before he signed this form (Exhibit 17F/22). The extreme assessment in regard to marked limitations in the table at the top of the second page is not supported by any evidence documented by Dr. Septer and is inconsistent with the claimant's ability to take college courses, help care for her father, and volunteer on a part-time basis up to five nights per week at a bingo hall. Finally, Dr. Septer's assessment of the claimant's ability to lift and carry as well as stand and walk is not supported by any objective clinical or diagnostic findings, is more restrictive than even alleged by the claimant, and is again inconsistent with the claimant's ability to take college courses, help care for her father, and volunteer on a part-time basis up to five nights per week at a bingo hall.

9

(PageID.206–207.) Plaintiff claims the ALJ's decision to assign less than controlling weight to the doctor's opinion, and his reasons for doing so, violate the treating physician rule. The Court disagrees.

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979, at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating

physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir., Jan.19, 2007).

The ALJ's rationale for discounting Dr. Septer's opinion enjoys overwhelming support in the record. As the ALJ noted, the check-box opinion contains very little explanation or support for its conclusions. The Sixth Circuit has recently characterized such indications, lacking accompanying support, as "weak evidence at best." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)). Moreover, the ALJ correctly stated there was little support for the doctor's opinions in the record. For example, contrary to his opinions regarding Plaintiff's perceptual disturbances, Dr. Septer consistently found Plaintiff was alert and oriented with good insight and judgment. Plaintiff denied

disorientation. (PageID.755, 760, 776, 780, 785, 789, 797, 805, 809, 829, 833, 986.) On other occasions Plaintiff appeared paranoid, but there were no hallucinations noted, and she was not disoriented. (PageID.771.)

Finally, the ALJ correctly noted the extreme limitations provided by the doctor where inconsistent with Plaintiff's reported activities. At the hearing, Plaintiff reported she stopped going to college classes in 2012 or 2013. She was taking a full load of eighteen credits and passing her classes. She reported receiving support from a disability advocate center and received counseling and tutoring, and was allowed more time on tests. She left class, however, not because she was unable to handle the work, however, but because her mother's car broke down, and she was unable to obtain transportation to school. (PageID.227–228.) Also at the hearing, Plaintiff admitted that she was able to lift up to twenty pounds, which is inconsistent with the doctor's findings that she could only rarely lift up to ten pounds. (PageID.251.) Plaintiff also reported being a care provider for her father. Though she admitted she was sharing the work with her mother, she stated she did most of the work. (PageID.908, 993–995.) Plaintiff also described doing volunteer work at the VA home and bingo hall and enjoying it as it got her out of the house. (PageID.896, 911, 915, 918, 921.) On April 29, 2014, Plaintiff reported "significant improvement in her anxiety." She was working through the anxiety "by participating in community activities at least 5 days a week." (PageID.923.) This work continued at least through August 2014. (PageID.949.) That month, it was noted she was going to bingo daily. (PageID.961.)

All this provides more than substantial evidence in support of the ALJ's determination to give only little weight to Dr. Septer's opinions. This claim of error is denied.

### 3. The ALJ's Evaluation of Plaintiff's Credibility.

In the function report that Plaintiff completed, as well as during her testimony, Plaintiff alleged that she was impaired to an extent far greater than as recognized by the ALJ. She reported being able to lift and carry only five pound weights and to walk for only ten feet at a time before needing a five minute rest. She thought she could only pay attention for an hour. (PageID.450.) She further believed she could not work because of her depression and because she found it difficult to deal with others. (PageID.245.) The ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (PageID.205.) Plaintiff contends this conclusion is unsupported by substantial evidence.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972) ("[i]t [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony")). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

The ALJ provided a lengthy discussion of Plaintiff's credibility:

> In assessing the claimant's credibility, I first reiterate that the clinical examination findings do not fully corroborate her alleged symptoms and limitations. Indeed, the medical evidence suggests that the claimant's symptoms have been relatively well controlled when she attends consistent treatment and takes her medications as prescribed. Despite the efficacy of this treatment, the medical evidence reveals that the claimant consistently failed to follow medical recommendations and take her medications as prescribed. This

inconsistent treatment suggests that the claimants' symptoms may not be as limiting as she has generally alleged.

The evidence raises other questions about the claimant's credibility. For instance, the claimant has described other daily activities that are not limited to the extent one would expect given her allegations of disabling symptoms. These activities include caring for her father, grocery shopping, preparing meals, washing dishes, doing laundry, caring for her personal hygiene, managing her own money, spending time with family and friends, watching television, listening to audio books, attending college courses, and volunteering up to five days per week (Exhibit 5E;7E/3; 10E; 6F/3; 8F/11; 9F/3 and 9; 11IF/82; 14F/3; 15F/4 and 7, 11, 14, and 17; 16F/l, 27, and 39; and l 7F/22 and 24). Third party function reports submitted by the claimant's mother, Faye Palmer, and aunt, Trudie Anderson, generally corroborate[] these activities of daily living (Exhibit 4E; 1 lE). While the scope and extent of these regular activities may change from day to day, the claimant's ability to participate in such activities tends to suggest that the claimant is far more capable than the claimant alleges and undermines the credibility of the claimant's allegations of disabling functional limitations.

With respect to taking college courses, the claimant testified that she obtained her GED in 2010 and then continued taking a full load (18 credits) of college courses until late 2012 or early 2013, that she was passing her classes (with accommodations being provided to her), and that she stopped taking classes because of a lack of transportation after her mom's car broke down rather than a reason related to her impairments.

With respect to caring for her father after the alleged onset date, she said she had stopped doing so at the time of the hearing, but her stated reason for stopping was also not related to her impairments. The claimant testified that her father had a stroke in 2010, that she helped with his care by preparing his meals and reminding him to take his medication until June of 2014, and that she stopped at his request and not because she was not able to continue. The treatment notes indicate the claimant still reported having the "full load of caring for her father" placed on her as of August of 2014 (15F/4; and l7F/22 and 24).

With respect to volunteering at the bingo hall, the claimant's testimony about the frequency and duration of this volunteer activity was not consistent with other evidence of record. At the hearing, the

> claimant acknowledged that she volunteered working at the pop (soda) stand selling drinks, but she asserted she did this for only about a month. She testified she stopped this volunteer activity because she was overwhelmed and not able to continue after her uncle, who was the cook at the bingo hall, had an accident and stopped working there. The evidence from the treatment notes indicate the claimant volunteered at the bingo hall for at least 10 months as much as five days a week, from November of 2013 through August of 2014 (14F/3; 15F/7, 11, 14, and 17; and 16F/l, 27, and 39). In addition to the claimant's ability to perform this activity undermining the credibility of the claimant's allegations of disabling functional limitations, the discrepancy between what she acknowledged at the hearing and what was indicated in the other evidence of record with respect to the frequency and duration of this volunteer activity further diminishes the persuasiveness of the claimant's subjective complaints and alleged functional limitations.

(PageID.205–206.) The ALJ's discussion here easily survives scrutiny. It was appropriate for the ALJ to take Plaintiff's daily activities into account in making his credibility determination. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). As is evident from the above discussion regarding Dr. Septer's opinion, the ALJ's discussion regarding Plaintiff's activities is supported by substantial evidence. Moreover, the ALJ correctly noted that Plaintiff's testimony regarding her activities was inconsistent with her admissions contained elsewhere in the record. For example, at the hearing Plaintiff testified that she only volunteered at the bingo hall for about a month before it got overwhelming. (PageID.247.) The medical record, on the other hand, shows that in November 2013, Plaintiff stated she was helping out with bingo one or two times a week. (PageID.911.) In February and March of 2014, she reported she was working part time at the bingo hall for tips and was enjoying the work. (PageID.915, 918, 921.) In August, it was noted that Plaintiff was going to bingo daily, and she agreed, as part of her therapy goals, to *continue* to attend and volunteer at

16

the bingo hall five nights a week. (PageID.960.) All this shows that Plaintiff was much more physically capable and socially engaged than she admitted to at the hearing.

The ALJ also correctly noted that Plaintiff was not always following medical advice, but when she was adhering to prescribed treatment, her symptoms were well controlled. On several occasions, Plaintiff's care providers noted that she was not taking the prescribed dosage of her medications. For example, on February 4, 2014, Ms. Sherita Joshway, a licensed social worker, noted that Plaintiff was skipping her morning dosage of risperdal, but was increasing her dosage at bedtime. (PageID.915.) Despite being encouraged to speak with her primary care provider about her medication issues, Plaintiff admitted to Ms. Joshway later that month that she continued to take both dosages of her risperdal at night and had not scheduled an appointment to meet with a physician. (PageID.918.) Furthermore, on April 15, 2014, Dr. Septer stated that Plaintiff was taking too much of her medication. (PageID.973.) SSR 96-7p notes that an "individual's statements may be less credible . . . if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p, 1996 WL 374186, at *7 (SSA July 2, 1996). Plaintiff contends her failure to follow treatment was due to her mental impairments, but other than this bare assertion, Plaintiff points to nothing in the record demonstrating this is the case.

Finally, as noted above, Dr. Septer consistently found Plaintiff was oriented, alert, and had good insight and judgment. Similar findings were recorded by her therapist Douglass Judson. On May 13, 2014, for example, he found Plaintiff oriented to person, place, time and situation. She had a cooperative and hopeful attitude, an intact memory, and good judgment and

insight. (PageID.933.) These findings are consistent across Mr. Judson's treatment notes and inconsistent with Plaintiff's testimony. (PageID.946–947, 961–62.)

All this demonstrates that the reasons provided by the ALJ to discount Plaintiff's credibility are supported by substantial evidence. While the Court does not doubt that Plaintiff is limited due to her physical and mental impairments, such limitations are adequately accounted for in the RFC.

### 4. The ALJ's RFC is Supported by Substantial Evidence.

In her final claim of error, Plaintiff claims the ALJ's RFC finding is unsupported by substantial evidence. A claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96–8P, 1996 WL 374184 at *1 (SSA July 2, 1996); *see also Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 116 (6th Cir. 2010). RFC is the most, not the least, a claimant can do despite her impairments. 20 C.F.R. § 404.1545(a); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). With respect to mental abilities, the regulations provide that:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. § 405.1545(c). At this point, the burden remains on Plaintiff to demonstrate a disability. 42 U.S.C. § 423(d)(5)(A).

Plaintiff faults the ALJ for failing to adopt the statements from her testimony, as well as the opinions from her treating physician, an unspecified therapist (likely Mr. Judson), her mother, and her aunt.[2] She claims that the opinions of non-examining agency reviewers cannot constitute substantial evidence in support of the RFC. The Court disagrees.

The ALJ is responsible for weighing conflicting evidence. *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001); *see also Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."). The ALJ was free to consider the reviewers' opinions and determine what weight, if any, they should be given. Indeed, an ALJ may rely on the opinions of the state agency physicians who reviewed a claimant's file. *See* 20 C.F.R. §§ 404.1527(e)(2)(I), 416.927(e)(2)(I) (state agency medical consultants and other program physicians are "highly qualified physicians . . . who are also experts in Social Security disability evaluation"). "[I]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." *Brooks v. Comm'r of Soc, Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013). The fact that a medical opinion is from an 'acceptable medical source,' which applies to the agency reviewers and does not apply to a therapist or Plaintiff's relatives, is also factor that may justify giving the reviewers' opinions greater weight. SSR 06–03p, 2006 WL 2329939, at *5 (SSA Aug 9, 2006).

---

[2] As noted above, the Court has found that the ALJ's discussion of Dr. Septer and Plaintiff's credibility is supported by substantial evidence. Plaintiff has not raised an independent claim regarding the non-acceptable sources of her therapist, her mother and her aunt.

The ALJ found Dr. Septer's opinion was not well supported and was inconsistent with the medical record. He further found Plaintiff's testimony was not credible. The Court has found both these decisions are supported by substantial evidence. Under these circumstances, the ALJ did not err by giving greater weight to agency reviewers. This claim of error is denied.

**CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **AFFIRMED.**

A separate judgment shall issue.


Dated: May 17, 2017                                      /s/ Janet T. Neff
                                                         JANET T. NEFF
                                                         UNITED STATES DISTRICT JUDGE